IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**AVERY L. JONES**,

      Plaintiff,

vs.                                                       **No. CIV 99-902 LCS**

**SOUTHWEST AIRLINES,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendant's Motion to Reconsider Denial of Summary Judgment, filed July 6, 2000 *(Doc. 43)*. The Court has reviewed the motion, the memoranda of the parties and the relevant authorities. The Court finds that Defendant's motion is not well taken and it shall be denied.

"A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate." *Weese v. Schukman*, 148 F.R.D. 279 (D. Kan. 1993). Basically, Defendant disagrees with the Court's Memorandum Opinion and Order entered June 21, 2000 which denied Defendant's motion for summary judgment. The Court notes that it

considered all of the arguments raised by Defendant before it denied the motion for summary judgment. The Court did not overlook or misunderstand the facts or evidence, but instead it rejected Defendant's arguments.

Although the Court could deny Defendant's motion summarily on the basis that it fails to raise an appropriate ground for reconsideration, the Court will take this opportunity to clarify certain issues discussed in the Court's Memorandum Opinion and Order. It appears to the Court that both parties hold misconceptions as to the Court's analysis. Those misconceptions, if left uncorrected, could confuse the issues at the trial of this matter and lead to the presentation of unnecessary and extraneous evidence.

**1. Prima facie case**

A *prima facie* case for disparate treatment creates nothing more than a preliminary inference of discriminatory animus that can be rebutted by an employer who articulates a legitimate, nondiscriminatory reason for the apparent disparate treatment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). In the context of discriminatory discharge for the purported violation of a work rule, plaintiff can establish a *prima facie* case by demonstrating three elements: (1) membership in a protected class; (2) discharge for violating a work rule; (3) that similarly situated non-minority employees were treated differently. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997)[1]. Plaintiff clearly established the

---

[1]As this opinion was in the drafting process, a panel of the United States Court of Appeals for the Tenth Circuit issued an opinion that appears to abrogate *Aramburu*, *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992), and *Elmore v. Capstan*, 58 F.3d 525, 529 (10th Cir. 1995) and to relax this test. *See Kendrick v. Penske Transportation Svcs.*, No. 99-3160 (10th Cir. Aug. 8, 2000), slip op. at 16. *Kendrick* does not assist Defendant because Plaintiff need not even show that similarly-situated nonminority employees were treated differently to establish a *prima facie* case under *Kendrick*. *See id.* (quoting *Perry v. Woodward*, 199 F.3d 1126, 1140

first two elements. The incidents involving Plaintiff and Rullman, as well as Rullman and Cahill, establish the third element of the *prima facie* case. In each of these two cases, there is evidence that ramp employees who worked along side plaintiff, in the same position, were fighting. Yet, when the dust had cleared at the end of Defendant's disciplinary process, Plaintiff, an African-American employee, was no longer an employee of Southwest Airlines but Rullman and Cahill, non-African-Americans, were still employed.

Defendant confuses the issue when it argues that this court has accused the System Board of bias even though Plaintiff has admitted the members of the board were not biased. That is **not** the point of my opinion, and Defendant cannot avoid summary judgment even if it were to present overwhelming evidence that the System Board was unbiased. The issue that was before the Court at the time the motion for summary judgment was decided was whether a different vote by the System Board in Rullman's hearing compared to Plaintiff's hearing must necessarily preclude Plaintiff from using the Rullman-Jones incident to establish a *prima facie* case on the grounds that the System Board vote prevents Plaintiff and Rullman from being "similarly situated." I concluded that as a matter of policy, intermediate decisions in a disciplinary scheme that included inputs by an employer-defendant could not automatically shield the defendant-employer from liability. Thus, I concluded that the Court should treat the different System Board votes as a proffered legitimate nondiscriminatory reason for the different outcomes (i.e., why Plaintiff was terminated an not reinstated but Rullman was reinstated)[2].

---

(10th Cir. 1999) "[A]n employee who belongs to a racial minority and who eliminates the two most common, legitimate reasons for termination, i.e., lack of qualification or the elimination of the job, has at least raised an inference that the termination was based on a consideration of impermissible factors." )

[2]Note that this is consistent with the approach taken by the Tenth Circuit Court of Appeals in *Kendrick,* slip op. at 14-16, in which a *prima facie* case was established simply by termination

3

I find Defendant's argument that "the only decision Southwest Airlines made regarding the fight [between Plaintiff and Rullman] was to terminate **both** Plaintiff and Rullman" to be disingenuous. If Defendant's letter of termination to Rullman amounted to a final termination decision, then Defendant certainly made the decision to reverse that termination and reinstate Rullman.

Without engaging in an unnecessary semantical analysis of exactly when "termination" occurred, the facts are undisputed that although Defendant issued a termination letter to both Plaintiff and Rullman, both Plaintiff and Rullman had the right to appeal the termination and/or to request reinstatement. That appellate process consisted of several steps, including the System Board and possible arbitration. The process resulted in Rullman being employed and Plaintiff being unemployed. Furthermore, Defendant had input into the entire disciplinary and appellate process, and made the final decision to reinstate Rullman.

Defendant misreads the Court's opinion when it argues that the Court's opinion accuses Defendant of engaging in some sort of elaborate but implausible conspiracy. In fact, I find the level of rhetoric used by Defendant in characterizing the "conspiracy" that the Court allegedly must have found to border on insulting. A careful reading of the Court's decision merely indicates that Defendant had too much input into the process to shield it from liability at the *prima facie* case stage of the analysis. In other words, an intermediate outcome in a process to which Defendant had substantial input cannot transmute "similarly situated employees" into "dissimilarly situated employees." The Court's discussion at page 8 of the Memorandum Opinion and Order specifically disclaims any suggestion of a conspiracy, but notes that for policy reasons the Court

---

of a minority employee who was performing otherwise acceptable work and the position was not eliminated after the termination. All evidence involving the work rule violations was addressed at the second and third phases of the *McDonnell Douglas* analysis.

4

must emphatically reject Defendant's tempting suggestion to find Plaintiff and Rullman dissimilarly situated because of the different System Board votes.

Given that Southwest Airlines' disciplinary and appeals process produced different results for two virtually identically situated individuals (Jones and Rullman), the burden then shifts to Defendant to articulate a legitimate nondiscriminatory reason for the different outcome. Defendant offers the different System Board votes as the reason. As the Memorandum Opinion and Order clearly states, that suffices to meet Defendant's burden of production at the second stage of the *McDonnell Douglas* analysis because Defendant would be obligated to bring the Rullman termination to arbitration before it would be final.

**2. Pretext**

The burden now shifts back to Plaintiff to demonstrate that the reason offered by Defendant for the different outcome was pretextual. Note that *Plaintiff* has the burden of production and persuasion at this step; evidence that the System Board was unbiased is irrelevant unless Plaintiff argues System Board bias as evidence of pretext.

At the third step of the *McDonnell Douglas* inquiry, Plaintiff may establish pretext in a number of different ways. "[A plaintiff] may not be forced to pursue any particular means of demonstrating that [a defendant's] stated reasons are pretextual." *Patterson v. McLean Credit Union*, 491 U.S. 164, 187-88 (1989) *as quoted in Kendrick*, slip op. at 18. Contrary to Defendant's argument that evidence of the attendance policy is irrelevant, and implying that the *only* relevant evidence in the pretext analysis is whether similarly situated employees were terminated for violating similar workplace infractions, pretext may be established by evidence of defendant's treatment of plaintiff during the time of his employment, evidence of defendant's

5

general policy and practice with respect to minority employment, and evidence of a general policy and practice of discrimination against African-American employees.  *See McDonnell Douglas*, 411 U.S. at 804-05.  Pretext may also be established with evidence that Defendant's stated reason for the adverse employment action was false or that Defendant acted contrary to written or unwritten company policies in making employment decisions.  *See Kendrick*, slip op. at 18.  If in fact Southwest Airlines purports to have certain "mandatory" termination policies, but enforces them only against minority employees, then certainly that may be used as evidence of pretext.  Furthermore, if in fact Defendant and Rullman have similar work records but Rullman's is repeatedly classified by management as superior, then that could be evidence of pretext.  As noted by the Court, although there may be other evidence of Plaintiff's and Rullman's work history, the evidence on work history presented by *Defendant* in the motion for summary judgment did not indicate to the Court any difference in work history - both employees were rated superior in some categories, acceptable in most of the remaining categories, had previous attendance problems, but attendance for both employees was within the 7-point limit at the time of the fight.  Furthermore, there is evidence, contrary to the assertions of Defendant, that Defendant presented seemingly irrelevant evidence on work history to the System Board.  Viewed in the light most favorable to Plaintiff, that could be evidence that Defendant's mandatory termination policy for fighting was not so "mandatory."

     At trial, Plaintiff has the burden to establish pretext, and may do so in any reasonable manner.  At the summary judgment stage, Plaintiff presented sufficient evidence that, when viewed in the light most favorable to Plaintiff, could establish pretext.  Defendant chose not to come forward with evidence on summary judgment to counter Plaintiff's evidence, but instead argued incorrectly that as a matter of law, such evidence could not support a *prima facie* case or

pretext.  Defendant is forewarned that at trial it must counter Plaintiff's specific method of demonstrating pretext; if Plaintiff does not choose to argue that the System Board was biased, then Defendant will not be allowed to parade a host of witnesses before the Court on the unbiased nature of the System Board members because that issue would be irrelevant.[3]

Defendant also quotes that language from *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1314 (10th Circuit 1992) to argue "that the mere finding of disparate treatment, without a finding that the disparate treatment was the result of intentional discrimination based upon protected class characteristics, does not prove a claim under Title VII."  To the extent Defendant implies that Plaintiff must establish more than a *prima facie* case plus pretext, this is contradicted by the recent Supreme Court holding in *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2108-09 (2000).  A *prima facie* case plus proof that the reason offered by the Defendant is pretextual may be sufficient, without more, to establish a claim of employment discrimination. *See id.* at 2109.

**3. The Rullman-Cahill Incident**

Contrary to Defendant's assertion in footnote 3 of its reply brief that the Court improperly relied on Plaintiff's affidavit even though the Court said it was not relying on it, the Court did ***not*** use any evidence from Plaintiff's affidavit in deciding the motion for summary judgment.  The Court did use an excerpt from Plaintiff's deposition, Ex. 30 to Pl.'s Mem. Br.  *See* Mem. Op. and

---

[3]Of course, Defendant may present to the jury the different System Board votes and evidence of the collective bargaining agreement under which Defendant was prevented from reinstating Plaintiff and obligated to take the Rullman termination to arbitration after the System Board votes.  Defendant also may present evidence about the System Board's composition, procedure, or management's presentation of issues if Plaintiff raises issues such as these to show pretext.

Order *(Doc. 42)* at 3. If Defendant wanted to strike that deposition testimony, Defendant should have made such a motion. Of course, in all likelihood, the Court would have denied that motion. Exhibit 30 clearly indicates that Plaintiff observed the incident personally, and thus is competent to testify. Although Plaintiff's testimony may be self-serving, it nonetheless is admissible and the jury may decide to give it whatever weight it chooses.

In any event, there are certainly factual disputes as to the nature of the Rullman-Cahill incident. This Court recognizes that the distinction between "horseplay" and "fighting" is often a highly subjective one. Factual disputes that hinge on the subjective interpretations of witnesses are not appropriately resolved by the Court on a motion for summary judgment.

Defendant also argues that one instance of possible disparate treatment is not enough to stave off summary judgment, and cites dicta contained in an unpublished Tenth Circuit case, *Armesto v. Federal Express Corp.*, 1994 WL 470184 (10th Cir. Aug. 31, 1994), for support. *Armesto* does not stand for the proposition that one instance of disparate treatment can never be sufficient to establish a Title VII claim; rather, the Court of Appeals engaged in a fact-specific inquiry to determine that the plaintiff in *Armesto* had not presented sufficient evidence of pretext because only one other employee with the same number of warnings (for different infractions) was not terminated, and that employee was differently situated because he had very good performance in all other areas. *See id.* at *2. Defendant's other cases are also readily distinguishable and, again, do not hold that one instance of disparate treatment can never be sufficient. *See Stephens v. City of Topeka, Kansas*, 33 F. Supp. 2d 947, 962 (D. Kan. 1999) (one instance in which a supervisor made derogatory comments about another black employee but not about whites was not sufficiently related to termination decision to show pretext; supervisor was the person who recommended hiring plaintiff); *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511-12 (4th Cir. 1993)

8

(pretext not shown where one white employee received more severe discipline and another white employee received less severe discipline than a minority employee; overall, no consistent pattern to show that the minority employee was more severely disciplined). If the alleged misconduct is very similar and Defendant fails to come forward with an adequate explanation for the disparate treatment, there appears to be no reason why a jury could not find that Defendant's explanation pretextual.

Wherefore,

**IT IS ORDERED** that Defendant's Motion to Reconsider Denial of Summary Judgment, filed July 6, 2000 *(Doc. 43)* is **denied.**

_____
LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE