IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**AVERY L. JONES,**

       **Plaintiff,**

**v.**                                                                                       **CIV No. 99-902  LCS-ACE**

**SOUTHWEST AIRLINES,**

       **Defendant.**

## THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEFENDANT'S RULE 52 MOTION

**THIS MATTER** came on for a non-jury trial on December 18, 2000 through December 19, 2000 before the Honorable Leslie C. Smith, United States Magistrate Judge. Once the Plaintiff presented his case in its entirety, the Defendant moved for a Judgment on Partial Findings according to Federal Rule of Civil Procedure 52(c). The Court, after hearing arguments of counsel and considering the relevant law, granted the Motion for Judgment on Partial Findings and thus makes the following findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52. The Court had the opportunity to hear the testimony and observe the demeanor of all of the Plaintiff's witnesses.

### Findings of Fact

1.    Plaintiff Avery Jones ("Jones") is an African-American citizen of the United States.

2. Defendant Southwest Airlines ("Southwest Airlines") is a national airline carrier doing business in the State of New Mexico.

3. Southwest Airlines hired Jones as a part-time ramp agent on about November 3, 1990 at its Albuquerque Airport location. Jones later became a full-time ramp agent.

4. The 1995-1999 Agreement between Southwest Airlines Co. and Southwest Airlines Ramp Operations Provisioning Association (currently known as TWU-Local 555) ("Union Contract") governed the employment relationship, in pertinent part, between Jones and Southwest Airlines.

5. Southwest Airlines Ground Operations Manual Basic Rules of Conduct set forth duties and responsibilities for station personnel, including Jones, and a list of reasons for reprimand or discharge.

6. The Basic Rules of Conduct, in effect in December, 1997, provided that "any violation of the following will be grounds for disciplinary action. Discipline may range from a reprimand to discharge, depending on the circumstances."

    (1) "Excessive absenteeism or tardiness or failure to maintain a satisfactory attendance record."

    (3) "Restricting work, using threatening or abusive language, intimidating, coercing or interfering with fellow employees or their work."

    (4) "Participating in a fight with another employee."

    (5) "Engaging in horseplay."

        (9)     "Unacceptable or immoral behavior on Company property."

        (21)   "Abusive and disrespectful behavior to a fellow SWA employee or Customer."

        (33)   "Any employee who strikes another employee in a display of anger shall be terminated."

7. Throughout his employment with Southwest Airlines, Jones had documented performance and attendance problems.

8. Jones' most recent performance evaluation in August 1997 (four months before he was terminated) shows that in the first category of "Attitude", Jones was rated overall as "unacceptable." In the Attitude category, Jones received unacceptable ratings for "safety conscious", "care-employees/company", helpful/cooperative" and "productive." These were the lowest scores possible in the evaluation. Only his "grooming" was rated "superior." In the second category of attendance, Jones again overall was rated "unacceptable." In the third overall category of "Aptitude", Jones was given an overall rating of satisfactory, but he still received "unacceptable" ratings for "safety" and "driving regulations." Jones' supervisor wrote on this performance evaluation that Jones' attitude towards his supervisors needed improvement and that he needed to be more courteous and respectful to them. The supervisor also wrote that Jones needed to assist other employees more often and in every capacity and that he had been late to flights frequently.

9. As of July 21, 1997, pursuant to the Union Contract, Jones was given a warning letter regarding his poor attendance. Over a four-year period, Jones received 12 written letters regarding his tardies, no shows and attendance problems.

10. In about May, 1997, Jones was found to have been obstructive, to have engaged in unacceptable behavior and to have failed to carry out his job duties. He was given a final written warning as of May 14, 1997. Jones filed a grievance regarding the written warning. In lieu of proceeding to a System Board Southwest Airlines later decided to remove the final letter of warning and to give Jones another chance. As part of this decision, Mr. Willie Edwards, then Director of Ground Operations, stated that immediate improvement was necessary in Jones' performance and asked that Jones be given a performance appraisal at the earliest opportunity to assist with this goal.

11. In 1996, Jones was found insubordinate by a supervisor.

12. At least one co-worker of Jones found that Jones' work ethic needed improvement, that Jones did not show up to work when he should have been there and that he took his job for granted.

13. While on-duty at work on December 8, 1997, Jones and a co-worker, Greg Rullman ("Rullman"), participated in a physical fight within public view outside on the tarmac near Gate 6 at the Albuquerque Airport.

14. Other Southwest Airlines' employees witnessed, at various times, both Jones and Rullman participating in this fight.

15. In accordance with the Union contract, Mr. Winston immediately suspended both Jones and Rullman, with pay, pending an investigation.

16. Southwest Airlines investigated the fight between Jones and Rullman. The investigation included a fact finding meeting held on December 9, 1997. The meeting was conducted by Mr. Dave DeMeyer, Manager of Ramp and Operations. Mr. DeMeyer reviewed witness statements and interviewed Jones, Rullman and witnesses to portions of the fight.

17. After the investigation was concluded, Southwest Airlines concluded that both Jones and Rullman had violated numerous provisions of its Basic Rules of Conduct. Although it was not determined which employee, if either, was the primary instigator of the fight, it was concluded that both men participated in the fight.

18. Accordingly, Mr. Winston terminated both Jones and Rullman, effective December 11, 1997. Mr. Winston's superiors approved the termination decision.

19. None of the Southwest Airlines decision makers, involved in the termination decision, made disparaging remarks regarding Jones' race.

20. On December 12, 1997, Jones and Rullman were informed of their terminations, again in accordance with the Union contract provisions.

21. Southwest Airlines terminated Jones and Rullman for the identical reasons: violations of Southwest Airlines' Basic Rules of Conduct, including: interfering with fellow employees or their work, participating in a fight with another employee, unacceptable behavior on company property, abusive and disrespectful behavior to a fellow employee and/or striking a co-worker in anger.

22. The Basic Rules of Conduct provide that any of the listed actions, including those identified above in No. 26, "will be grounds for disciplinary action. Discipline may range from a reprimand to discharge, depending on the circumstances."

23. Jones read the Basic Rules of Conduct and understood that he could be terminated for participating in a fight with a co-worker.

24. Both Jones and Rullman were members of the Transport Workers Union-Local 555 ("TWU- Local 555" or "Union") and were bound by the terms of a collective bargaining agreement negotiated and executed by the Ramp Operations Provisioning Association (currently known as TWU-Local 555) and Southwest Airlines ("Union Contract").

25. Jones does not contend that the System Board was biased against him because of his race.

26. Both Jones and Rullman grieved their terminations under the provisions of the Union Contract. They each claimed they were terminated without just cause.

27. Both grievances proceeded to separate System Board hearings in Dallas, Texas, each held on January 29, 1998.

28. The System Board is an independent arbitration panel, established under the Union Contract, to hear and decide grievances. Pursuant to the terms of the Union Contract, the System Board's decisions "shall be final and binding on both the Company and the [TWU-Local 555]."

29. The System Board is comprised of two Southwest Airlines appointees and two TWU-Local 555 appointees.

30. The Union Contract provides that Southwest Airlines selects two of the four members of a System Board. Generally, these members are selected from management ranks. These members cannot be a direct report to the company representative who is presenting the Company's position to the System Board.

31. The TWU-Local 555 selects its two "players" from a standing list of Union members (not to include employees from its Board of Directors).

32. The Jones' System Board make-up was entirely different from Rullman's System Board.

33. At the Jones' System Board hearing, Jones was represented by the President of the TWU-Local 555, Mark Goodwin. The witnesses at Jones' hearing included Jones and co-worker Hugh Barlow.

34. As is its practice, Willie Edwards, then Regional Director at Southwest Airlines presented the Company's position at both Jones' and Rullman's hearings. Mr. Edwards is African American.

35. Jones' System Board voted 4-0, unanimously upholding Jones' termination. Pursuant to the terms of the Union Contract, the unanimous vote concluded Jones' grievance process. The decision is final and binding on Southwest Airlines and the grievant.

36. Rullman's System Board split 2-2. The two Southwest Airlines managers' on the Board voted to uphold the termination. The two TWU-Local 555 members voted to reverse Rullman's termination.

37. On January 31, 1998, the TWU-Local 555 requested an arbitration of Rullman's grievance because of the deadlock vote.

38. Southwest Airlines deliberated and decided to reinstate Rullman, rather than proceed to arbitration. Part of Southwest Airlines' reasoning in reinstating Rullman included that Rullman had a good work history. Rullman's latest performance review, signed 9/6/97, shows that he had overall ratings of satisfactory in the categories of "attitude" and "aptitude." Within those categories, he received superior ratings in "adaptability/flexibility", "communication" and "bin slip completion." He received no "unacceptable" ratings.

39. Rullman also had an excellent attendance record as of 1997. He actually had accumulated 4 negative points of attendance indicating that he had had no tardies, unreported absences, etc. in 1997. Seven positive points of attendance issues is the maximum an employee can accumulate under the Union Contract before termination may occur. Therefore, Rullman had

perfect plus attendance in 1997. Although Rullman had unsatisfactory attendance in 1995-1996, he clearly had resolved the attendance problems.

40. Rullman was reinstated, effective February 24, 1998. He was placed on final written warning and was not given back pay.

41. Alleged incidents that certain Caucasian employees exceeded the permissible point level for attendance issues without being terminated does not support a finding of pretext or disparate treatment. Southwest Airlines' Basic Rules of Conduct provides that a poor attendance record is grounds for discipline, ranging from a reprimand to discharge, depending on the circumstances. In addition, the Union Contract sets forth certain provisions regarding attendance. Under the Contract, an employee accumulates points towards possible discipline for being tardy, not showing up to work, and/or absences. If the employee reaches 7 points, he or she may be terminated under the Union Contract. However, the Union Contract requires that the employee first be given a fact finding meeting to determine if the Union Contract was violated. The fact finding meeting may result in lesser discipline than a discharge. An attendance policy of this nature is not a rule of comparable seriousness to the prohibition of fighting in the work place or hitting another co-worker in anger. In addition, the four employees identified by Jones were appropriately disciplined and are not similarly situated to Jones. In some situations, they were terminated, but the decision was appealed by the Union and the employee was given an additional window of time in which to

improve, or they were reinstated after the grievance process. Moreover, there was no credible proof that minority persons were treated differently from non-minority persons.

42. Jones has not presented any evidence that Southwest Airlines' termination or reinstatement decisions were pretextual. Jones has not presented any evidence that Southwest Airlines took any actions towards him because of his race.

43. There was a complete failure of proof as to Plaintiff being terminated for any reason remotely related to his race.

44. There was absolutely no evidence of any discrimination or racial animus in the management's decisions to terminate Jones or rehire Rullman.

## **Conclusions of Law**

1. Jurisdiction of the United States District court is proper under 28 U.S.C. § 1331. Jones asserts a claim of disparate treatment race discrimination under Title VII of the Civil Rights Act and a state claim of wrongful termination.

2. This Court has personal jurisdiction over both parties.

3. To establish a prima facie case of disparate treatment race discrimination, Jones has the burden of proving that (1) he was a member of a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge. *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000)

4. Jones, at all times, retains the burden of persuasion to prove that Southwest Airlines intentionally discriminated against him because of his race. Jones may prove his claim through either direct or indirect evidence. *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2106 (2000).

5. Jones has no direct evidence of race discrimination. For example, there is no direct evidence that Jones' termination had anything to do with his race or that the Southwest Airlines managers who made the decision considered Jones' race.

6. Jones has no circumstantial evidence of race discrimination.

7. The sole issue at trial is whether Jones has adduced sufficient evidence to warrant the fact finder's determination that the adverse employment action was taken against him because of his race. *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).

8. Southwest Airlines had legitimate, non-discriminatory reasons for terminating Jones and Rullman. Both men were terminated for identical reasons as set forth in Southwest Airlines' Basic Rules of Conduct: interfering with fellow employees or their work, participating in a fight with another employee, unacceptable behavior on company property, abusive and disrespectful behavior to a fellow employee and/or striking a co-worker in anger.

9. Southwest Airlines had legitimate business reasons for reinstating Rullman after the two System Boards' different results. Because the System Board hearings were final and binding on both the Company and the grievant, the

unanimous vote to uphold Jones' termination closed his grievance. Southwest Airlines then had the option to proceed to arbitration or to settle the grievance in some other manner short of arbitration.

10. Southwest Airlines' legitimate business reasons for these decisions were truthful. Plaintiff failed to show any pretext related to Plaintiff's termination or Rullman's reinstatement.

11. Southwest Airlines did not treat Jones differently from other similarly-situated employees who violated work rules of comparable seriousness.

12. It is the manager's perception of the employee's performance, and not the employee's subjective evaluation of his performance, that is relevant in determining pretext. *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000) (internal citation omitted).

13. Any reasonable employer and any reasonable System Board could have concluded that Jones was participating in the fight with Rullman.

14. To offer evidence of disparate treatment, Jones must show that other employees were similarly situated and had violated work rules of comparable seriousness. An employee who deals with the same supervisor and is subject to the same standards governing performance might be similarly situated. Relevant employment circumstances, such as work history and applicable company policies also determine whether the employees were similarly situated. *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000).

15. Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal. It prohibits only intentional discrimination based upon an employee's protected class characteristics. *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (*citing EEOC v. Flasher*, 986 F.2d at 1319).

16. To establish a prima facie case for a claim based on wrongful discharge (wrongful termination), the plaintiff must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn; a sufficient nexus must exist between public policy asserted by employee and reasons for his or her discharge. *Vigil v. Arzola,* 102 N.M. 682 (1983).

17. Acts, which as matter of public policy are not accepted in society, have included reporting of suspected illegal activities, namely, the use of illegal drugs, *Garrity v. Overland Sheepskin Co. of Taos*, 121 N.M. 710, 917 P.2d 1382 (1996), as well as for sexual harassment, *Coates v. Wal-Mart Stores, Inc.*, 127 N.M. 47, 976 P.2d 999 (1999). The courts have also held that a statute prohibiting certain actions can be viewed as a statement of public policy in order to support the common-law cause of action. *Gandy v. Wal-Mart Stores, Inc.*, 117 N.M. 441, 872 P.2d 859 (1994). The public policy of this state has been announced by the Legislature; "[i]t is an unlawful discriminatory practice for an employer . . . to discharge . . . any person

>otherwise qualified because of race [or] color. . . N.M. STAT. ANN. §28-1-7 (1978). The plaintiff having failed in his burden of proving any form of discrimination must also fail on his wrongful discharge claim.

18. Jones was not wrongfully discharged from work.

19. Jones was not discriminated against on the basis of race.

20. Jones cannot recover damages under a theory of wrongful discharge.

21. Jones is not entitled to any relief or damages under Title VII.

22. Jones' claims under Title VII for race discrimination and any other claim he attempts to assert will be dismissed with prejudice.

The Court enters a Judgment on Partial Findings under Rule 54(b), executing these Findings of Fact and Conclusions of Law, contemporaneously with this Order.

_____
**LESLIE C. SMITH**
United States Magistrate Judge